**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

DEMETRICE DIZER
ADC # 128196                                                                                       PLAINTIFF

V.                                              1:08-cv-00048-JJV

NAOMA LEDBETTER, Nurse, Grimes Unit, Arkansas
Department of Correction; BILLIE HENDRIX,
Nurse, Grimes Unit, Arkansas Department of Correction; and
RAFAEL SANCHEZ-MONTSERRAT, Doctor, Grimes Unit,
Arkansas Department of Correction                                                        DEFENDANTS

**ORDER**

Plaintiff, a prisoner at the Grimes Unit of the Arkansas Department of Correction, filed this lawsuit *pro se* pursuant to 42 U.S.C. § 1983, alleging claims of deliberate indifference to a serious medical need. Defendants have now filed a Motion for Summary Judgment (Doc. No. 40), supported by a Brief (Doc. No. 41) and Statement of Facts (Doc. No. 42), as required by Local Rule 56.1.

In light of his *pro se* status, Plaintiff was given thirty days in which to respond to the summary judgment motion. *See* Doc. No. 44. Plaintiff has not submitted a response of any kind to the motion or the Court's Order. After careful review of the documents and pleadings in this matter, the Court now finds that the Motion for Summary Judgment should be granted and Plaintiff's claims must be dismissed with prejudice.

**I.     Standard**

Plaintiff did not file a responsive pleading, nor did he respond to the Defendants' statement

of material facts or file his own statement of material facts. Thus, the Court accepts as true all of the facts stated in Defendants' statement of material facts. The Court also accepts as true those facts alleged by Plaintiff in his Complaint.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, the court should view the facts in a light most favorable to the non-moving party and give the nonmoving party the benefit of any inferences that can logically be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)(quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the nonmoving party fails to provide a statement

of facts with citations to the record, that party fails to create a genuine issue of material fact. E.D. Ark. L.R. 56.1(c)("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ").

## II.  Background

Plaintiff was playing basketball on December 2, 2006, and injured his right leg at that time (Doc. No. 2, Exhibit "D" at 1-2). Plaintiff reported to the infirmary on a walk-in basis on December 2, 2006, stating he had hurt his leg playing basketball. Plaintiff was examined by a licensed practical nurse. The unidentified nurse noted a small nodule on the lateral side of his right foot, that he had limited range of motion, and that limited weight bearing was tolerated (Doc. No. 40, Exhibit "D" at 14). The nurse telephoned Dr. Sanchez, who ordered an ice pack for 24 hours, Ibuprofen 800 mg. 3 times a day for 30 days, and an ace wrap for ten days (Doc. No. 40, Exhibit "D" at 1). Dr. Sanchez also directed that Plaintiff be allowed to wear shower shoes for seven days and that he have no duty for seven days. *Id.*

The next day, Plaintiff was examined by LPN Kathryn Bell. At that time, he complained about his right leg hurting and stated he had injured it the day before while playing basketball. She noted the right leg was wrapped in an ace bandage and that there was an "alteration in comfort." She ordered Tylenol and, if Plaintiff saw no improvement, for him to return to the clinic in three days (Doc. No. 40, Exhibit "D" at 2).

On December 5, 2006, Dr. Sanchez ordered an x-ray. The x-ray was conducted at Harris Hospital and read by Dr. Chauhan. The x-ray indicated a non-displaced fracture of the distal fibula with soft tissue swelling noted. As a result of the x-ray, Dr. Sanchez ordered no duty, yard call, or sports for 15 days, directed that Plaintiff receive a bottom bunk for 15 days, and prescribed crutches,

which Plaintiff received the same day (Doc. No. 40, Exhibit "D" at 1, 3, 16, 33).

On December 6, 2006, Dr. Sanchez examined Plaintiff. At that time, he noted that Plaintiff had prominent swelling and pain in his right ankle and was unable to apply pressure to his right leg. Dr. Sanchez requested an orthopedic evaluation. Dr. Sanchez also extended Plaintiff's no duty and no sport limitation to 30 days and extended his order for crutches for 30 days (Doc. No. 40, Exhibit "D" at 3, 5, 17, 23). On December 13, 2006, Plaintiff was examined by Dr. Bernard Crowell, an orthopedic surgeon. Dr. Crow noted the fracture and placed Plaintiff in a short leg cast. Dr. Crowell also requested that he return in approximately three weeks (Doc. No. 40, Exhibit "D" at 28).

On December 14, 2006, Dr. Sanchez filled out a consult request for a follow-up orthopedic visit (Doc. No. 40, Exhibit "D" at 25). On January 10, 2007, Dr. Crowell examined Plaintiff on a follow-up basis. Dr. Crowell noted that Plaintiff had no complaints and there was mild tenderness over the area of the fracture. Dr. Crowell x-rayed the ankle again and directed that Plaintiff be returned to the clinic in three weeks (Doc. No. 40, Exhibit "D" at 29).

On February 8, 2007, Dr. Sanchez continued Plaintiff's restrictions from duty and sports for 30 days and renewed his authorization of crutches (Doc. No. 40, Exhibit "D" at 18). Again, Plaintiff signed acknowledging that he was still in possession of crutches (Doc. No. 40, Exhibit "D" at 34). On March 1, 2007, Dr. Sanchez requested another orthopedic follow-up (Doc. No. 40, Exhibit "D" at 26). On March 14, 2007, Dr. Sanchez ordered another x-ray of the right ankle. The x-ray was taken and the impression was "no recent fracture is noted" (Doc. No. 40, Exhibit "D" at 22). On March 28, 2007, Plaintiff was again examined by Dr. Crowell. Plaintiff had a complaint of swelling in his ankle; upon examination he was non-tender to palpation over the injured area of the ankle. At that time, Dr. Crowell explained to Plaintiff that the ankle could swell on an intermittent basis for six to nine months after being injured, but that it would indeed resolve over time. Dr. Crowell

asked that he be allowed to follow up with Plaintiff in approximately a month (Doc. No. 40, Exhibit "D" at 30).

Dr. Sanchez completed another consultation request and, on May 9, 2007, Dr. Crowell examined Plaintiff for the last time regarding his ankle. Plaintiff complained of some swelling in the ankle which was not painful. The examination indicated a healed fracture. Again, Dr. Crowell explained to Plaintiff that some swelling would occur from time to time, but that it would resolve slowly (Doc. No. 40, Exhibit "D" at 31).

Plaintiff's last medical complaint regarding this issue appears to have occurred on August 19, 2007, at which time he reported to sick call with reported swelling (Doc. No. 40, Exhibit "D" at 35). He was examined by LPN Chris Loe on August 21, 2007. The LPN noted there was bilateral symmetry, a full range of motion with "no crepitus, no edema, or redness noted." The examination showed no objective sign of injury. The LPN did prescribe Tylenol for three days and directed Plaintiff to notify the medical staff if the condition worsened or did not improve (Doc. No. 40, Exhibit "D" at 36).

### III.    Legal Analysis

#### A.    Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act, at 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), even when the prisoner seeks relief that is not available through the prison administrative process, such as money damages, *Booth v. Churner*, 532 U.S. 731 (2001). Further, § 1997e(a) requires "proper

exhaustion," meaning the prisoner must fully exhaust the prison remedies that are available, including complying with the administrative deadlines and other critical procedural rules, or face the possibility of the loss of the claim for procedural default. *Woodford v. Ngo*, 548 U.S. 81, 87-103 (2006). Finally, the exhaustion requirement is an affirmative defense that must be pled and proved by the defendant. *Jones v. Bock*, 549 U.S. 199, 211-217 (2007).

Defendants argue that the ADC inmate grievance policy requires that an inmate appeal a medical grievance to the Deputy Director for Health and Correctional Programs to complete the grievance process. Accordingly, they argue that Plaintiff has failed to exhaust his available administrative remedies by completing the grievance process through appeal to the Deputy Director for Health and Correctional Programs.

Defendants' motion is accompanied by an affidavit executed by Charlotte Gardner, the Medical Grievance Investigator for the Arkansas Department of Correction. As the custodian of the medical and mental health grievances filed by inmates, she states that her review of the Department's grievance records from November 1, 2006, through January 31, 2008, reveals Plaintiff "did not exhaust any grievance to the Deputy Director of Health and Correctional Programs during this period of time" (Doc. No. 40, Exhibit B). Plaintiff has offered no response to the contrary, nor any specific facts showing a genuine issue for trial on this point. Accordingly, his claims must be dismissed for failure to exhaust.

While Plaintiff did file an initial grievance, technically, Plaintiff failed to exhaust the administrative remedies that were available to him. Accordingly, Plaintiff's claims should be dismissed without prejudice for failure to exhaust.

**B.    Deliberate Indifference Claims**

In fairness to Plaintiff, the Court believes it necessary to also address the merits of the

pending claims against Defendants. While clearly Plaintiff has suffered some level of pain, discomfort and inconvenience, the facts in this case do not amount to a violation of Plaintiff's constitutional rights.

Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). The United States Court of Appeals for the Eighth Circuit has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Here, Defendants did provide treatment to Plaintiff. Although Defendants were slow to correctly diagnose that Plaintiff had fractured his leg bone, they responded to his requests to be seen and treated. In fact, Defendants regularly provided treatment from shortly after his injury until he was ultimately healed.

Furthermore, Plaintiff has shown no lasting impairment linked to the delay in diagnosis and treatment. When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogation on other grounds recognized by *Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995) (quoting *Hill v. Dekalb Regional Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). This means Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997)(quoting *Hill*, 40 F.3d at 1188). This he has not done. To the contrary, Plaintiff seems to agree that the final

outcome of his treatment was successful. (Doc. No. 40, Exhibit "C"at 39, lines 6-9). This would certainly preclude a finding of detrimental effects as a result of an alleged delay in Plaintiff's treatment.

Moreover, in the medical opinion of Dr. Rafael Sanchez, the medical care and treatment provided to Plaintiff was appropriate and satisfactory for his medical complaints (Doc. No. 40, Exhibit "E" at 3). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Jackson v. Douglas*, 270 Fed. Appx. 542 (8th Cir. 2008) quoting *Dulany, supra*, 132 F.3d at 1240.

Plaintiff's allegations, at best, amount to a question of negligence. Plaintiff did receive immediate treatment for his injury. Plaintiff was just not provided the correct treatment until several days after he was injured. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Mere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." *Estelle*, 429 U.S. at 106.

Every person wishes their medical provider to correctly identify and properly treat an illness or injury at the first opportunity. In Plaintiff's case, this did not occur until several days had passed. Anyone in Plaintiff's situation would understandably be upset. While Plaintiff is understandably upset, his claims are not of constitutional proportion. On the whole it appears from the evidence before the Court that Plaintiff has not been victimized by deliberate indifference to his medical needs. Accordingly, the Court finds that Defendants' Motion for Summary Judgment (Doc. No. 40) presents no genuine issue of material fact.

**IV.** **Conclusion**

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 40) is GRANTED;

2. Plaintiff's claims are dismissed with prejudice; and

3. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 5th day of October, 2009.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE